UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALLEN L. BERGE,

                          CASE NO. 16-10931

         *Plaintiff*,           MAGISTRATE JUDGE PATRICIA T. MORRIS

*v.*

COMMISSIONER OF SOCIAL SECURITY,

         *Defendant.*

_____/

**MAGISTRATE JUDGE'S OPINION AND ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT (Docs. 15, 18)**

I.      **OPINION**

      A.      **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Allen L. Berge ("Berge") claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq.* (Doc. 3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 18).

On August 8, 2013, Berge filed an application for DIB, alleging a disability onset date of March 21, 2012. (Tr. 179-85). The Commissioner denied his claim. (Tr. 107-15). Berge then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 14, 2014 before ALJ Janice L. Holmes. (Tr. 70-106). At the hearing,

1

Berge—represented by his attorney, Lewis Seward—testified, alongside Vocational Expert ("VE") David Holwerda. (*Id.*). The ALJ's written decision, issued September 16, 2014, found Berge not disabled. (Tr. 56-64). On September 16, 2015, the Appeals Council denied review, (Tr. 1-7), and Berge filed for judicial review of that final decision on March 15, 2016. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy

3

> that plaintiff can perform, in view of his or her age, education,
> and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

4

### D.        ALJ Findings

Following the five-step sequential analysis, the ALJ found Berge not disabled under the Act. (Tr. 56-64). At Step One, the ALJ found that Berge had not engaged in substantial gainful activity from his alleged onset date of March 21, 2012 through his date last insured ("DLI") of December 31, 2013. (Tr. 58). At Step Two, the ALJ concluded that the following impairments qualified as severe: "diabetes mellitus, hypertension, a hernia, chronic obstructive pulmonary disease, anemia, obstructive sleep apnea, and chronic liver disease . . . ." (*Id.*). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 58-59). Thereafter, the ALJ found that Berge had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [He] can stand or walk a maximum of four hours during an eight hour workday, but can sit for six hours. He requires a sit/stand option. He can frequently balance and occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, scaffolds, ramps, and stairs. He should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, chemicals, poor ventilation, and other pulmonary irritants.

(Tr. 59). At Step Four, the ALJ found Berge "unable to perform any past relevant work" through his DLI. (Tr. 62). Proceeding to Step Five, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. 63-64).

### E.      Administrative Record

#### 1.      Medical Evidence

The Court has reviewed Berge's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.      Application Reports and Administrative Hearing

#### i.      Function Report

Berge submitted a Function Report for review alongside his medical evidence of record. (Tr. 218-25). In it, he specified that he lived in a mobile home with his sister. (Tr. 218). He described his conditions as a "paralyzed diaphra[g]m, emphysem[a], fibrosis, in combination limits my ability for labor. I also have pain related to fatty liver disease. Jarring movements are painful. I'm also Type 2 Diabetic, and high blood pressure. My left foot is chronically numb and swollen." (*Id.*). The condition also affected his sleep, forcing him to "sleep upright" lest food got into his lungs. (Tr. 219). Before the onset of his condition, he said he could "work long hours . . . without losing breath." (*Id.*). He marked no issues with personal care. (*Id.*). Although he cooked his own food on a daily basis, he indicated that doing so took fifteen minutes to three hours. (Tr. 220). And he remained capable of doing chores such as laundry, cleaning, and mowing "if it isn't too hot," though the mowing "would take a long time." (*Id.*).

Berge indicated that he would go outside every day, drive a car, and shop in stores for food and personal items "at least once a week" for forty-five minutes to two hours. (Tr. 221). He retained the capacity to pay bills, count change, handle a savings account, and use

6

a checkbook. (*Id.*). His hobbies included reading, computers, and movies, though his conditions prevented him from sitting at the computer too long "due to pain in my sides." (Tr. 222). He regularly visited and talked with friends and family, and ventured out to the theater, racetrack, library, and ball park. (*Id.*). But when suffering from his conditions, he could not keep up with friends in any activity and would "fall behind simply walking anywhere." (Tr. 223).

Providing information about his abilities, Berge marked problems lifting, squatting, bending, walking, sitting, kneeling, and stair climbing. (Tr. 223). Each activity "result[ed] in my getting out of breath." (*Id.*). However, when walking, I usually just go slow and I'm fine." (*Id.*). As treatment for diabetes, he wore "special socks and shoes . . . all the time." (Tr. 224). In his final remarks, Berge noted "my weak diaphra[g]m doesn't have enough back pressure to keep food out of my lungs so I'm forced to sleep in a recliner. I avoid . . . bread and must [cut out] yeasty foods to avoid gas. I was on oxygen for a six month period due to this. With my low carb diet I'm limited to what I can eat. The meds I was taking for my diabetes was to[o] hard on my liver so they took me off it to try just diet. I have fatty liver disease and [psoriasis] of the liver." (Tr. 225).

### ii.       Berge's Testimony at the Administrative Hearing

At the hearing before the ALJ, Berge noted that he had an associate's degree in electronic science and technology. (Tr. 76). He was a tactical communications operator and mechanic in the U.S. Army from 1984 to 1986. (*Id.*). After that he was in the National Guard until 1993. (Tr. 77). His last job was as "an electronic assembler and test technician for Aerotech . . . at G.M. in their instrumentation lab." (*Id.*). At the time of the hearing,

Berge was "getting 30 percent" service-connected disability for his paralyzed diaphragm. (*Id.*).

Berge was honorably discharged from the military after a physical that found "enlarged" lymph nodes. (Tr. 79). Upon discharge from the military, "they started testing me at the V.A. and first they did a tube test" which found nothing. (*Id.*). Eventually, "around '87," an "exploratory surgery" nipped "the nerve that lead[] to [his] diaphragm[.]" (Tr. 79-80). As a result, his organs would get pushed into his left lung, and this compressed the lung, making breathing difficult. (Tr. 80). It also caused gas that "presse[d] up against my lung even more." (Tr. 82). Though he was taking pills for this issue, they were "working less and less . . . ." (Tr. 83).

Thereafter, Berge's attorney confirmed that his vital capacity—or his ability to exhale—was "down to 42 percent." (Tr. 84). Berge noted he had problems with fumes from things such as "any kind of petroleum product," as well as "perfume" and "hairspray." (Tr. 85). Stairs and movements such as bending over also presented problems, leaving Berge out of breath. (*Id.*). Although he could mow the lawn, he would "just do a couple rows and . . . rest" until the lawn was done. (Tr. 86). He estimated that the whole lawn would take half a day to complete. (*Id.*). When shopping, Berge preferred small stores "so I don't have to walk all the way back to get stuff or I don't have to look for stuff." (*Id.*). Due to sleeping problems, he had to sleep in a recliner. (*Id.*). Indeed, he had been sleeping in a recliner for five years at the time of the hearing. (Tr. 87).

When working at his last job, Berge noted he still had problems, particularly going up the catwalk, which would take him "awhile" to climb. (*Id.*). In meetings, he would fall

asleep. (Tr. 88). And at other points in the day, he would "fall asleep unintentionally" on a regular basis. (*Id.*). This occurred despite sleeping for approximately eight hours each night. (Tr. 89). He tried to get a CPAP, but "I couldn't breathe out when they put the pressure up, so . . . they couldn't fit me with it." (Tr. 89). To treat his conditions, he took various medications and maintained a "really low, low carb diet." (Tr. 91). Discussions with other doctors have not indicated any surgical fix for his paralyzed diaphragm. (Tr. 93).

Although Berge told his pulmonologist he could walk a mile, Berge clarified that he could only do so if he stopped and rested "every block." (Tr. 94). Though he could lift up to thirty pounds, he indicated that "I don't think I could carry it very far." (Tr. 95). He also said that his sister did most of the grocery shopping because "I try to avoid [all the walking]." (*Id.*).  When he was laid off at his last job in September 2008, he attempted a cabinet-making job for a day but "couldn't do it" because "[i]t was too strenuous." (Tr. 97-98).

### iii.        The VE's Testimony at the Administrative Hearing

The ALJ then called upon the services of the VE to determine what Berge's capacity to work was during the alleged period of disability. (Tr. 101). The first hypothetical posed asked what work would have been available for an individual "at a light exertional level, however he can only stand or walk a maximum of four hours in an eight hour shift, but can sit for six hours. Can occasionally climb ramps and stairs, ladders, ropes, or scaffolds. Can frequently balance, occasionally stoop, kneel, crouch, and crawl. Should avoid concentrated exposure to extreme cold and fumes, odors, dusts, gasses, chemical, poor

9

ventilation, and other pulmonary irritants." (Tr. 103). The VE indicated that such an individual could not perform Berge's past work, but identified "common alternatives" such as an "assembler production worker"—with about 3,000 regional job availabilities and 70,000 national job availabilities—an "inspector tester"—with about 1,500 regional job availabilities and 35,000 national job availabilities—and a "hand packager"—with about 2,500 regional job availabilities and 90,000 national job availabilities. (Tr. 104). All such jobs had a sit-stand option.

In the second hypothetical, the ALJ asked about an individual "expected to be off-task 15 percent or more" of the work day. (*Id.*). The VE indicated that such a limitation would preclude competitive employment. (*Id.*). And in the third hypothetical, the ALJ asked about an individual "expected to be absent two or more days per month, . . ." (*Id.*). Again, the VE indicated that such a limitation would preclude competitive employment. (Tr. 105). Finally, the VE also noted that a hypothetical individual requiring two extra twenty-minute breaks a day would not be able to find competitive employment. (*Id.*).

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.*

§ 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic

11

techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

12

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish

13

the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

## G.    Analysis

In his brief, Berge presents three arguments: (1) that the ALJ erred in finding that his condition did not meet Listing 3.02A, (Doc. 15 at ID 527-29); (2) that substantial evidence does not support the RFC's "light work" limitation, (Doc. 15 at ID 530-32); and (3) that substantial evidence does not support the RFC's provision against mere "concentrated exposure" to environmental and pulmonary irritants, (Doc. 15 at ID 532-33). I address each argument in turn.

### 1.    Listing 3.02A

Berge first contends that the ALJ "erroneously evaluate[d] whether or not a Listing –level impairment is met by looking at all three [$FEV_1$][1] values and analyzing the highest one, rather than the lowest one." (Doc. 15 at ID 528). In doing so, the ALJ followed a logic under which "very few claimants would be found disabled if they are unlucky enough to have one test value that is above the Listing requirement" akin to "throwing the baby out with the bath water." (Doc. 15 at 529) (internal quotation marks omitted).

At the time of the ALJ's decision, Berge was required to demonstrate an $FEV_1$ equal to or below 1.55 in order to meet Listing 3.02A. *See generally* 20 C.F.R. § 3.02 Pt. 404, Subpt. P, App'x 1 (2014). "The reported one-second [$FEV_1$] . . . should represent the *largest* of at least three satisfactory forced expiratory maneuvers," and "[t]he *highest* values

---

[1] Forced Expiratory Volume in one second.

of the $FEV_1$ . . . whether from the same or different tracings, should be used to assess the severity of the respiratory impairment." *Id.* Berge's argument on this count therefore divines an administrative methodology precisely opposite to that outlined in the regulations. As the ALJ noted, all but one of Berge's $FEV_1$ values exceeded 1.55, and for this reason she reached the correct outcome.

In an ostensible effort to undermine the ALJ's reasoning, Berge contends that the ALJ should have considered Berge's $FEV_1$ value of 1.71 from March 19, 2013 if she was truly evaluating the higher values. (Doc. 15 at ID 528). In addition, Berge notes that the ALJ made no comment on whether "three satisfactory forced expiratory maneuvers" actually appeared in the record, or the fact that his lowest $FEV_1$ value of 1.55 occurred after his DLI. (Doc. 15 at ID 528-29). Although Berge's charges seem intended to undermine the ALJ's outcome, they do so in a Pyrrhic fashion. Even supposing the ALJ's failure to mention Berge's $FEV_1$ value of 1.71—or, for that matter, her consideration of the three $FEV_1$ values produced after the DLI—constituted error, any such error proved harmless. *Accord, e.g.*, *Collier v. Comm'r of Soc. Sec.*, No. 08-11712, 2009 WL 891725, at *8 (E.D. Mich. Mar. 31, 2009) ("[T]he highest of the values is outside the range of disability. Although the ALJ did not list the values in his decision, this is harmless error because the value is greater than that necessary for a finding of disability under Listing 3.02(A)."). In fact, failure to consider Berge's post-DLI $FEV_1$ values would have substantially harmed Berge's case, as *no* $FEV_1$ value would have met the Listing requirement. Likewise, evaluating Berge's 1.71 $FEV_1$ value, which is *higher* than the values directly addressed by the ALJ, would only have further doomed Berge's claim to meet Listing 3.02A.

16

For these reasons, the ALJ performed a proper analysis with respect to whether Berge met Listing 3.02A.

## 2.     Light Work

According to Berge, substantial evidence does not support an RFC for light work because Dr. Brophy's opinion, to whom the ALJ accorded great weight, recommended "sedentary work" and observed an ability to sit for six of eight hours in a workday, thereby precluding light work. (Doc. 15 at ID 530). He also posits that the ALJ mischaracterized the evidence of his daily activities in finding him able to walk up to two miles, shop for two hours, and cook for three hours. (Doc. 15 at ID 531). In short, "[s]ubstantial evidence fails to support the findings of the Commissioner when a light RFC is contrary to the medical evidence *and* the State medical expert that the ALJ relied upon." (Doc. 15 at ID 532).

As Berge points out, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Indeed, the ALJ does not find him able to do this. But the ALJ also did not find Berge could perform a *full* range of light work. *See Lambert v. Comm'r of Soc. Sec.*, 2010 WL 546756, at *4 (N.D. Ohio Feb. 11, 2010) ("[The claimant] incorrectly argue[s] that the ALJ had to show [she] was able to stand or walk for six hours in an eight-hour workday. This ability is required to perform a *full range* of light work. The ALJ found, however, that [the claimant] could perform a *limited range* of light work at jobs of significant number in the national economy. A limited range of light work does not require this standing and walking durational requirement." (internal citations omitted)).

Where, as here, the ALJ finds "a claimant's RFC is in between two exertional levels, . . . the grid guidelines, which reflect only common—and not all—patterns of vocational factors, are not binding and are instead used only as an analytical framework." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010). In this scenario, the VE's testimony may assist in the ALJ's determination "[a]s long as [it] is in response to an accurate hypothetical." *Id.*

In providing for a limited range of light work, the ALJ capped the time Berge could stand to "a maximum of four hours," required "a sit/stand option," and provided for frequent balancing and occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, scaffolds, ramps, and stairs. Substantial evidence in the medical record buttresses each finding, for each arises from Dr. Brophy's opinion, and the record contains no other opinion urging more restrictive limitations. *Cf. Prescott v. Comm'r of Soc. Sec.*, No. 11-11226, 2012 WL 3965904, at *8 (E.D. Mich. Aug. 15, 2012) ("[T]here is no documented specific requirement in the medical record that plaintiff needs to lie down during the day either periodically or as extensively as she claims. No treating source imposed this limitation on her or opined that she was restricted in this fashion. Indeed, plaintiff does not offer any opinion from a treating physician that she was more physically limited than as found by the ALJ."). That the RFC strays in certain respects from Dr. Brophy's recommendations is of no consequence as long as the ALJ's findings are supported by substantial evidence. The ALJ retains the power to formulate an RFC independent of medical source opinions, even those given great weight, so long as substantial evidence informs her findings. *See* 20 C.F.R. § 416.1545(a); *see also, e.g.*, *Price*

18

*v. Comm'r of Soc. Sec.*, No. 14-cv-13662, 2016 WL 3193025, at *2 (E.D. Mich. June 9, 2016) ("[A]n ALJ is not required to adopt all of an examining source's findings, even if the ALJ gives the opinion great weight."); *Taylor v. Colvin*, No. 1:13CV222, 2013 WL 6162527, at *15 (N.D. Ohio Nov. 22, 2013) ("Nor was [the ALJ] required to adopt this particular opinion of [the medical source] by virtue of the fact that, overall, he gave [the] opinion great weight.").

To counteract the ALJ's analysis of his daily activities, Berge cites his own testimony, arguing that the ability to shop for two hours "tells nothing about an ability to work" and "may indicate he needs to pace himself." (Doc. 15 at ID 531). He also notes his testimony that "he can't keep up with his friends in any activity," and gets out of breath when "lifting, bending, sitting, kneeling and climbing." (*Id.*). As an initial matter, however, the ALJ did not cite Berge's daily activities for the purpose of demonstrating an ability to work *per se*, but to illustrate an incongruence between his lifestyle and his "complaints of disabling symptoms and limitations." (Tr. 61); *see* SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996) (noting that "[o]ne strong indication of the credibility of an individual's statements is their consistency" with evidence of a claimant's daily activities). Indeed, "[w]hen objective medical evidence is lacking, daily activities are an important means for the ALJ in determining whether the claimant's reports are credible." *Jernigan v. Comm'r of Soc. Sec.*, 2014 WL 1328177, at *10 (E.D. Mich. Mar. 28, 2014). And as the ALJ said, Berge's allegations "are not entirely credible." (Tr. 61); *see, e.g.*, (Tr. 377) (August 27, 2013: "He can walk one to 2 miles."); (Tr. 418) (December 2, 2013: "Denies difficulty breathing."); (Tr. 425) (December 2, 2013: "Patient currently denies of chest pains, sob,

nausea, abdominal distension, abdominal pain, . . ."); *see also* (Tr. 366) (November 5, 2012: "He reports feeling tired, but that has gotten better."). Even if the ALJ might have interpreted this evidence in a manner favorable to Berge—had she been so inclined—"an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). For this reason, the ALJ's "light work" RFC should be affirmed.

### 3.     Concentrated Exposure

With respect to the ALJ's provision in the RFC that Berge avoid concentrated exposure to environmental and pulmonary irritants, Berge suggests (somewhat flippantly) that "even unimpaired hypothetical workers who have no respiratory problems should avoid *concentrated* exposure" to such irritants. (Doc. 15 at ID 533). Instead, due to his paralyzed diaphragm, Berge argues that "[t]he bar should have been lowered to avoid *all*" exposure to environmental and pulmonary irritants. And because "the RFC fails to *accurately* portray [his] breathing difficulties, the hypothetical question to the VE lacks substantial evidence . . . ." (*Id.*).

In leveling this argument against the ALJ's opinion, Berge essentially pigeonholes his latter "light work" argument into a separate argument regarding the RFC's "concentrated exposure" limitation. Nevertheless, substantial evidence validates this finding, as Dr. Brophy's notes recommended that Berge avoid "concentrated exposure" to extreme cold, fumes, odors, dusts, gases, and poor ventilation. (Tr. 112). The ALJ included this limitation in her questions to the VE, and thus the VE's answers provided substantial

evidence to conclude that Berge could have worked as an assembler, an inspector, or a hand packager. (Tr. 103-04). Nor does Berge allege that the ALJ erred in assigning Dr. Brophy great weight. As a result, the Court should reject Berge's argument on this count.

### H.  Conclusion

For the reasons stated above, the Court finds that the ALJ's decision, which ultimately became the final decision of the Commissioner, is supported by substantial evidence.

## II.  <u>ORDER</u>

In light of the above findings, **IT IS ORDERED** that Berge's Motion for Summary Judgment, (Doc. 15), is **DENIED**, the Commissioner's Motion for Summary Judgment, (Doc. 18), is **GRANTED**, and this case is **AFFIRMED**.

Date:  January 17, 2017                                S/ Patricia T. Morris
                                                        Patricia T. Morris
                                                        United States Magistrate Judge


### <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: January 17, 2017                                By s/Kristen Castaneda
                                                        Case Manager